UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

V.                                    CR. NO. 19-10010

BRIAN ORLANDELLA

<u>DEFENDANT'S REPLY TO GOVERNMENT'S SENTENCING MEMORANDUM</u>

In its sentencing memorandum [Doc 278] the government has raised the issue of the imposition of a two level enhancement on the theory that Mr. Orlandella committed perjury by submitting an inaccurate affidavit in support of his motion to suppress statements and that he lied during the course of his testimony at the suppression hearings that took place on March 2 and 3, 2020. [Mem. pp. 7-11].  He disputes this allegation and replies to the government's enhancement request as follows.

A sentencing court is authorized to enhance a defendant's offense level by two levels if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice." U.S. Sentencing Guidelines Manual § 3C1.1.   In this case the sentencing enhancement should not be applied.

I. *Facts Material To The Issue*:

On the morning of his arrest, agents of Homeland Security Investigations, Massachusetts State Police, and the SRT tactical

unit battered in his front door, detonated a "flash-bang" grenade inside his home, stormed the residence, and separated him from his family. [Testimony of Special Agent Joseph Iannaccone, Transcript of Motion Hearing 3/3/2020, Tr. pp 14-17.]

The operations plan for the execution of a search warrant of Mr. Olandella's electronic devices included approximately twenty agents and operators, about eight or nine from HSI and about a dozen from SRT. [Iannacone, Tr. 15] Agents were dressed in full tactical gear and at least three or four of them were armed with rifles. [Testimony of Erinn Orlandella, 3/3/2020, Tr. 65]

The agents engaged Mr. Orlandella in conversation for approximately fifteen minutes before formally interviewing him. [Iannaccone, Tr. 29-30.] Agents Iannaccone and Kelleher questioned Mr. Orlandella at a table in his kitchen. The interview was recorded. It was not until at least nine minutes and eight seconds into the reocorded interview that either of the agents mentioned that they were at the home in connection with a child pornography investigation. [Iannaccone, Tr. 32.]

Exhibit number 3 in the hearing was an HSI Miranda form. [Tr. 34.] Neither Agent Iannaccone or Kelleher read the form to Mr. Orlandella prior to or during questioning. [Tr.34.] Neither agent asked Mr. Orlandella if he understood his Miranda rights. [Tr. 34-35] Instead, he was asked if he understood or read English. [Tr. 35.]

Mr. Orlandella testified that he did not read the form and that no law enforcement agent read or explained it to him, and at the time he signed and gave the form back he still did not know why they wanted to question him. [Orlandella. Tr. 106.] This is consistent with the agent's testimony that they never mentioned child pornography to him until more than nine minutes into the taped interview. [Iannaccone, Tr. 32.]

II.   <u>Argument</u>

A sentencing court is authorized to enhance a defendant's offense level by two levels if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice." U.S. Sentencing Guidelines Manual § 3C1.1. However, the court must make an independent finding, by a preponderance of the evidence, that all the elements of perjury have been satisfied before imposing the enhancement. <u>United States v. Fermin</u>, 771 F.3d 71, 81 (1st Cir. 2014)

Perjury consists of false testimony under oath concerning a matter material to the proceeding, as long as the testimony is given **"with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."** <u>United States v. Shinderman</u>, 515 F.3d 5, 19 (1st Cir.2008) (quoting <u>United</u>

States v. Dunnigan, 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d
445 (1993) ). [Emphasis supplied.]


    Furthermore, application note # 2 to § 3C1.1 states:

    *2. Limitations on Applicability of Adjustment.—This*
    *provision is not intended to punish a defendant for the*
    *exercise of a constitutional right. A defendant's denial*
    *of guilt (other than a denial of guilt under oath that*
    *constitutes perjury), refusal to admit guilt or provide*
    *information to a probation officer, or refusal to enter*
    *a plea of guilty is not a basis for application of this*
    *provision. In applying this provision in respect to*
    *alleged false testimony or statements by the defendant,*
    ***the court should be cognizant that inaccurate testimony***
    ***or statements sometimes may result from confusion,***
    ***mistake, or faulty memory and, thus, not all inaccurate***
    ***testimony or statements necessarily reflect a willful***
    ***attempt to obstruct justice.*** [Emphasis supplied.]

    A look at the circumstances surrounding the raid on Mr.
Orlandella's house and the impression and memory he has of them is
critical in the court's analysis of the enhancement issue.  The
early morning violent Bin Laden style raid on his home was a
traumatic one to all within the residence.  The first indication

-4-

that strangers were at the door was the sound of a battering ram
being deployed against the wooden front door of the home,
splintering it into pieces. Then came the hand grenade lobbed into
the living area of the home – a so-called "flash-bang" grenade.
[Testimony of S/A Innaccone and E. Orlandella, supra]. Such
grenades are used by the military in combat situations, and when
thrown, explode and "make a bright flash and a very loud bang for
the purpose of rendering the people – or whoever is in that room –
stunned, disabled, [and] disoriented." State v. Carey 373 N.C. 445,
452 (2020). (Supreme Court of North Carolina finding that a
"flash-bang" grenade is a "weapon of mass death and destruction" as
defined in the state's criminal statute,  N.C.G.S. § 14-288.8 (
c)(1)).

The hallway was then filled with approximately a dozen armed
tactical personnel dressed in combat gear who peeled off and began
removing the entire Orlandella family from their respective rooms
without  explanation.

The flash bang stuns the suspect's eyes and the bang stuns his
ears. His skin feels the concussion, and his  nose and mouth suck
in some of the smoke. All five senses simultaneously send an
emergency message to the brain, and the overloaded brain shuts
down. Grossman, David A, Lt. Col., *On Combat,* Third Edition, 2008,
p.66.

The court credited the agents' testimony over that of the

defendant in deciding the various suppression motions. However, memories or sense impressions may vary, especially in traumatic or extremely stressful situations. That is different from a planned, willful intent to provide false testimony. Any variance is the result of confusion, mistake, or faulty memory .

Lt. Col. Dave Grossman is an internationally recognized scholar, author, soldier, and speaker who is one of the world's foremost experts in the field of human aggression and the roots of violence and violent crime.  He is a West Point psychologist and professor, a leader in the field of human trauma, violence, stress response, and officer involved shootings.  He has presented to over 100 different colleges and universities world wide, and he has trained educators and law enforcement professionals at the federal, state and regional levels in all 50 states and over a dozen foreign nations.  He has four books and has authored or co-authored 43 articles in journals and Periodicals including the Harvard Journal of Law & Public Policy. He has presented papers before the national conventions of the American Medical Association, the American Psychiatric Association, the American Psychological Association, and the American Academy of Pediatrics.

In his book *On Combat*, Lt. Col. Grossman devotes a large block of text to human reaction to traumatic events similar to those experienced by Mr. Orlandella and his family on the day of the predawn paramilitary raid on his home. Although the subjects in the

study from which the Grossman data is derived are police officers who were required to fire their weapon in a confrontation, the stress factors are similar or the same as those experienced by civilians in an equally traumatic and stressful scenario. Grossman writes that two of the resulting affects on the person who had just undergone the traumatic event are memory loss and memory distortion. (Grossman, David A., *On Combat*, 3rd Edition, 2008, pp 100-119.)

Drawing on a study published in their book, *Deadly Force Encounters*, Second Edition, 1997 by Dr. Alexis Artwohl and Loren Christensen of 141 officers involved in the stress of an officer involved shooting where they were required to discharge their weapon (not all officers hit the target), it was found that there were thirteen measurable physiological and psychological effects experienced by the officers. Fifty-one percent (51%) of the officers experienced memory loss for parts of the event. Forty-seven percent (47%) suffered memory loss for some of their own actions. (Grossman, *On Combat*, pp 54-55.) A chart detailing the effects entitled "Perceptual Distortions in Combat" is attached hereto as an exhibit.

Given Mr. Orlandella's situation in light of the events leading up to his restricted movement and the law enforcement interview  it is more than obvious that the entire morning was a traumatic experience and stressful in every way. Mr. Orlandella's

perception and memory of what occurred, the words and actions of those on scene as well as his own are consistent with perceptual and memory distortion resulting from "confusion, mistake, or faulty memory" and, do not "necessarily reflect a willful attempt to obstruct justice." See Application Note 2.

The events sworn to in his affidavit and testified to at his hearings are the way he remembers them. Altered, distorted, or faulty memory is not a crime, and does not equate to a plan to mislead the court as to material facts.

Further, when Orlandella testified that the agents did not read or explain his Miranda rights. He was telling the truth. That statement is corroborated by the testifying agent. Whether he understood the rights is, even under the most pristine circumstances, is a subjective matter. Perhaps if he had read them while alone in a quiet library his understanding and perception would have been different. But that is not the case. He was detained in a stressful environment suffering the effects of the trauma of an armed invasion of his home and the intimidation of he and his family.

III. <u>Conclusion</u>:

The notion that Mr. Orlandella willfully committed perjury is not supported by a preponderance of evidence. The two level enhancement should not be applied in this case.

-8-

Respectfully submitted,
Brian Orlandella,
By his attorney,


/s/ *James J. Cipoletta*
_____
James J. Cipoletta
MA Bar No. 084260
385 Broadway
Revere, MA 02151
Telephone 781.289.7777
E: jim@cipoletta.com


Dated: July 29, 2022



## *Certificate of Service*

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on or before the above date.


/s/ *James J. Cipoletta*